THE STATE OF NEW JERSEY. RESPONDENT, v. MAYOR
AND ALDERMEN OF JERSEY CITY, APPELLANT.

Submitted December 8, 1919—Decided October 25, 1920.

1. The only way in which a municipality can acquire the right to
   appropriate and use the public waters of the state is by a grant
   directly from the state itself, or by the duly authorized purchase
   or condemnation of such right from a third person, either cor-
   porate or individual, to whom it has already been granted by the
   state.
2. Each party's pleading is to be construed most strongly against
   himself, and most favorably to his adversary, and, so, any am-
   biguity or omission therein must be at the peril of that party in
   whose allegations it occurs.

On appeal from the Supreme Court.

For the appellant; *John Bentley.*

For the state, *Thomas F. McCran,* attorney-general, and
*William Newcorn,* assistant attorney-general.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was instituted by
the state against the city of Jersey City to recover from it the
sum of $22,885.34, being the amount of certain license fees
alleged to be due to the state from the city for the years 1912
to 1918, inclusive. These license fees were assessed upon the
municipality by the Board of Conservation and Development,
in the execution of the powers conferred upon it by the act of
June 17th, 1907, entitled "An act to establish a state water
supply commission, and to define its powers and duties, and
the conditions under which waters of this state may be di-
verted," and supplemental legislation.

The eighth section of the act referred to (*Pamph. L.* 1907,
*p.* 637) provides that "every municipality, corporation or pri-
vate person now diverting the water of streams or lakes with

outlets for the purpose of a public water supply shall make annual payments on the 1st day of May to the state treasurer for all such water hereafter diverted in excess of the amount now being legally diverted," the payment to be considered as a license fee, and its amount to be fixed by the Board of Conservation and Development at a rate of not less than one dollar or more than $10 per million gallons.

The complaint in the case shows that at the time of the enactment of the statute in question the city of Jersey City was diverting from the Rockaway river daily thirty-eight million four hundred thousand gallons, and concedes that the diversion to the extent stated was permitted by the state. The license fees which are sought to be recovered were assessed by the Board of Conservation and Development upon the water diverted by the city from the Rockaway river in excess of the number of gallons just mentioned, and was at the rate of one dollar per million gallons.

The city of Jersey City by its answer denied the power of the Board of Conservation and Development to assess these license fees against it, upon the ground that by section 2 of the statute in question it is provided that "nothing in this act contained shall be construed to take from any municipality in this state the right to use and take all the water which it has the right to use or appropriate by purchase or condemnation;" and it avers that it comes within the protection of this provision of the statute because "it became entitled to divert daily fifty million gallons from the Rockaway river under contracts with the East Jersey Water Company, executed in October, 1895, and on April 22d, 1897, respectively, which contracts gave the defendant the alternative of purchasing a supply of water from the said Rockaway river, amounting to fifty million gallons daily, or the right to purchase the entire water plant of said East Jersey Water Company, which right to purchase the said defendant exercised through a resolution passed by the street and water board of Jersey City, on or about January 16th, 1900, approved by the board of finance commissioners on or about January 17th, 1900, and approved by the mayor January 18th, 1900."

After the answer came in a motion was made by the attorney-general to strike it out upon the ground that it constituted no defence to the state's claim, and after argument heard upon the motion, it was granted by the Supreme Court, and, subsequently, judgment was ordered to be entered in favor of the state.

From the judgment entered pursuant to this order the city of Jersey City has appealed.

The arguments both of the attorney-general and of counsel for the municipality rest largely upon the theory that the case presents for consideration and determination the question whether, by virtue of the provision of section 2 of the act of 1907 above recited, the city of Jersey City is entitled to abstract from the Rockaway river water to the amount of fifty million gallons daily, without being subjected to the license fees which have been imposed upon it, notwithstanding the fact that at the time of the enactment of the statute the amount of water abstracted by it was very much less. But this question, we think, is not ripe for determination. The section applies only to those municipalities of the state which, at the time of the enactment, had the right to use and take water from the running streams, lakes and ponds within the borders of the state; and as the control of such waters rests in the state in its sovereign capacity, as representative of, and for the benefit of, the people in common (*McCarter* v. *Hudson County Water Co.,* 70 *N. J. Eq.* 695), the only way in which a municipality can acquire the right to appropriate and use such waters is by a grant directly from the state itself, or, by the duly authorized purchase or condemnation of such right from a third person, either corporate or individual, to whom it has already been granted by the state. There is nothing in the answer of the municipality which shows a grant by the state to the East Jersey Water Company of the right to abstract from the waters of the Rockaway river fifty million gallons daily, or any other amount; and, of course, unless that corporation had, prior to the making of the contract set out in the answer, acquired from the State of New Jersey the right to abstract that water,

it could not, by contract, or in any other way, confer such right upon the city of Jersey City. This being so, the claim of Jersey City that it comes within the protection of section 2 of the laws of 1907, rests upon an assumed fact the existence of which is not averred in the answer even if it be conceded that this section has the force and effect claimed for it by counsel for the municipality. It is suggested that the allegation that "the defendant became entitled to divert daily fifty million gallons from the Rockaway river under contract with the East Jersey Water Company," &c., carries with it by implication the statement that the right to abstract this water had theretofore been granted to the East Jersey Water Company by the state. But this suggestion is in the face of settled rules of pleading. The assertion that the defendant became entitled to divert is a conclusion of law, depending for its soundness upon an undisclosed fact; and unless the court has that fact before it, the soundness of the pleader's conclusion cannot be judicially determined. *Breese* v. *Trenton Horse Railroad Co.*, 52 *N. J. L.* 250; *Millville Gas Co.* v. *Sweeten*, 74 *Id.* 24.

It is further suggested that as the parties have argued the fundamental question which they desire to have decided, this court ought to read into the answer the facts necessary to support the conclusion of law stated therein, so that the real matter intended to be put in issue can be finally determined. But this we are not at liberty to do. The question before us for determination is whether the Supreme Court, on the record submitted to it, was justified in striking out the answer, and directing judgment for the state; and unless the answer discloses a defence to the state's claim, there was no error in the judicial action. We have already pointed out that the fundamental fact upon which the argument made by defendant's counsel rested, does not appear in the pleading; and it is elementary law that each party's pleading is to be construed most strongly against himself, and most favorably to his adversary, and, so, any ambiguity or omission therein must be at the peril of that party in whose allegations it occurs. The application of this rule, as we think, demonstrates the sound-

ness of the judicial action complained of, and, consequently, the judgment under review must be affirmed.

As the State of New Jersey can have no desire to collect from the city of Jersey City the license fees which are the subject-matter of this litigation, unless the assessment of those fees against the municipality is justified by the provisions of the act of 1907, it seems to us that the proper course for the municipality to pursue is to apply to the Supreme Court, after this record has been remitted, to open the judgment for the purpose of permitting the municipality to amend its answer in such a way as to present the real question in controversy, and for permission to argue that question before that court when the record is so framed as to raise it. That such permission will be granted upon proper application we have no doubt.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 13.

*For reversal*—None.